## AFFIDAVIT

I, Salvatore D. Levatino, being duly sworn, depose and state as follows:

### Purpose of Application and Affiant Background

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of several electronic devices, a SIM card, and a notebook—items described with particularity below and in Attachment A—that are currently in law enforcement's possession and the seizure from those items of the electronically stored information described in Attachment B.

2. This application arises from an incident investigated by Border Patrol Agents assigned to the Beecher Falls Station Area of Responsibility (AOR) on or about June 13, 2023, when they had contact with Abraham HERNANDEZ and nine migrants who had just entered the United States in violation of law in the District of New Hampshire.

3. The items to be searched are the following:

    a. One Samsung wireless smart phone in evidence bag A5459729 belonging to Abraham HERNADEZ that was seized from his person;

    b. One black notebook in evidence bag A5296247 belonging to HERNANDEZ that was located in and seized from his backpack;

    c. One cell phone SIM card in evidence bag A5296256 belonging to HERNANDEZ that was located in and seized from his backpack;

    d. One Samsung wireless smart phone in evidence bag A5296258 belonging to Marco SOTO-CHAVARRIA that was seized from his person;

    e. One Apple iPhone wireless smart phone in evidence bag A5659728 belonging to SOTO-CHAVARRIA that was seized from his person;

1

    f.    One Apple iPhone wireless smart phone belonging to Irving ARANO-OCHOA in evidence bag A5296249 that was seized from his person

    g.    One Samsung wireless smart phone belonging to ARANO-OCHOA in evidence bag A5659624 that was seized from his person;

    h.    One Motorola wireless smart phone belonging to William CATALAN-RODRIGUEZ in evidence bag A5296259 that was seized from his person;

    i.    One Samsung wireless smart phone in evidence bag A5296246 belonging to Fernando ABURTO-CANTELLANO that was seized from his person;

    j.    One Vivo wireless smart phone in evidence bag A5296250 belonging to Maria FIGUEROA-CONTRERAS that was seized from her person;

    k.    One Huawei wireless smart phone in evidence bag A5296260 belonging to Jose Eduardo GARCIA-VASQUEZ that was seized from his person; and

    l.    One Motorola wireless smart phone in evidence bag A5296248 belonging to Rolfi Norbel ZUNUN-LOPEZ that was seized from his person.

4.    The items to be searched are currently located in the evidence safe at the U.S. Border Patrol, Beecher Falls Border Patrol Station, 288 Vermont Route 114, Canaan, Vermont 05903. Based on my training and experience, the electronic devices specified above have been stored in a manner such that the data on them would remain intact and in the same condition as they were at the time of their seizure.

5.    The applied-for warrant would authorize the search of the items—including forensic examination of the electronic devices and SIM card—for the purpose of seizing data, particularly described in Attachment B, that would evidence human smuggling and illegal entry activities—specifically, violations of 8 U.S.C. §§ 1324 and 1325.

2

6. I am a Border Patrol Agent (BPA) Intelligence (Intel) [BPA(I)] with the United States Department of Homeland Security, Office of Border Patrol. I have been employed as a BPA since May 2018. I am currently assigned as an Intelligence agent at the Beecher Falls Border Patrol Station in Canaan, Vermont. The Beecher Falls AOR includes the easternmost portion of Vermont and all of New Hampshire's border with Canada. I received formal training to identify and investigate alien smuggling and narcotics smuggling activities both at the United States Border Patrol Academy in Artesia, New Mexico between May and October 2018 and through regular and recurring on-the-job training.

7. In my experience investigating many alien smuggling cases, electronic devices were commonly used to facilitate the smuggling event in multiple ways, such as coordinating transportation, guiding the migrants when they illegally enter the country and look for the pick-up location, tracking the migrants' and drivers' positions, and sending verbal and/or non-verbal communications over Wi-Fi and/or telecommunications networks. I am aware that individuals working together to commit immigration crimes often use their cellular phones to contact one another before and during the smuggling event, to research related topics, to navigate while driving, and to coordinate meeting locations. These tasks are frequently necessary in the Swanton Sector generally, and the Beecher Falls AOR specifically, because the remote and rural nature of the AOR makes it difficult to arrange meetings at precise times and to navigate to locations unlikely to appear on printed maps. Further, I am aware that cellular phones and the cellular network often generate and record data without the phone users necessarily being aware of or able to delete the data.

8. The information contained within this affidavit is based upon my training and experience, upon my own investigative efforts, and upon investigation by other law enforcement

officers with whom I have spoken or whose reports I have reviewed. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below. It is meant to set forth probable cause to believe that the violations occurred, and it does not include every fact known to law enforcement about the events described below. Unless otherwise specified, the statements described in the following paragraphs are related in sum and substance and are not meant as direct quotations or complete descriptions.

**Probable Cause**

9. On June 13, 2023, at approximately 10:03 p.m., Swanton Sector Communications ("Dispatch") advised U.S. Border Patrol Agents in the Beecher Falls AOR of possible cross-border illicit activity in the area of Pittsburg, New Hampshire. The Royal Canadian Mounted Police ("RCMP") had notified Dispatch that RCMP officers had observed ten subjects with backpacks walking southbound in Canada toward the United States near Halls Stream Road in Pittsburg. Based on the number of subjects, their use of backpacks, the remote area, and the time of the notification, responding agents believed it was likely that the individuals intended to illegally enter the United States through the woods near Pittsburg.

10. In that area, Halls Stream Road is a north-south road that parallels—at a distance of a few feet to approximately half a mile—the international border between Canada on the west and the United States on the east for approximately 9 miles. Based on my conversations with agents assigned to the Beecher Falls Station and my review of historical cases, I am aware that the area along Halls Stream Road has been used by transnational organizations to smuggle contraband and humans into the United States illegally.

11. At approximately 10:37 p.m. on June 13, 2023, a concerned citizen that lives along Halls Stream Road contacted Border Patrol and stated that an unknown white Sports Utility Vehicle ("SUV") was parked in his driveway. The citizen had turned on his porch lights, and the SUV left the area at a high rate of speed. The citizen's residence is at the end of the public roadway portion of Halls Stream Road. At the end of the public roadway, there is a gate where camp owners input a code to open the gate and continue into the private area beyond the gate. The area near the citizen's camp is sparsely populated, and it is uncommon for non-resident vehicles to travel to the area, especially at night. After the citizen's call, BPA Dustin Norsworthy informed other agents that he had previously seen a white SUV drive northbound on Halls Stream Road at approximately 9:30 p.m. that evening.

12. Based on my training and experience, I am familiar with the methods frequently employed by human smugglers. One method historically employed by human smugglers in the Swanton Sector is for the organizer to have the aliens to be smuggled into the United States transported from a major metropolitan area (such as Toronto or Montreal) to a location near the United States border with Canada. The migrants are then dropped off in a remote and largely unmonitored location along the border and directed to walk across the border and meet up with a waiting vehicle in the United States. The waiting driver will then transport them within the United States in furtherance of their illegal entry. The organizers frequently track the migrants' progress via location sharing or GPS pin drops sent from phones carried by one or more of the migrants. The organizers then share that location information with the waiting drivers. Data reflecting those communications and location shares are frequently retained on the migrants' and drivers' phones, even if they attempt to delete the exchanged messages.

5

13. Because of the combination of the RCMP notification and the concerned citizen call, agents believed a human-smuggling event was likely in progress. Approximately 20 minutes after the concerned citizen call, at about 10:57 p.m., BPA Norsworthy observed a white SUV driving south on Halls Stream Road. BPA Norsworthy followed the vehicle, which was traveling at a high rate of speed, and noted that it was leaning to one side and appeared to be loaded heavily. BPA Norsworthy activated his vehicle's lights and siren to perform a vehicle stop and inspection. The white SUV, a 5-passenger Honda CRV, yielded near the intersection of US-3 and Bishop Brook Road between the towns of Clarksville and Stewartstown, New Hampshire. The vehicle was registered to Yeifry Manuel RODIRGUEZ-PENA out of Nashua, New Hampshire.

14. BPA Norsworthy approached the Honda CRV and observed people in the tailgate area and back seat area who appeared to him to be attempting to hide their heads. BPA Norsworthy identified himself as a United States Border Patrol Agent to the driver, who was later identified as Abraham HERNANDEZ. BPA Norsworthy asked HERNANDEZ where he had picked up the people in the vehicle, and HERNANDEZ stated he had picked them up on the side of the road. BPA Norsworthy asked one of the subjects in the back of the SUV how many people there were, and one of them answered ten. There was a female passenger in the front seat who was later identified as Ana PENA-SUAREZ, one the migrants who had just entered the United States. BPA Norsworthy asked the subjects in the back where they were born; eight responded Mexico, one responded Guatemala. Each subject admitted to not having proper immigration documents permitting them to enter or remain in the United States legally after being asked in the Spanish language. All of the vehicle's occupants were detained and

6

transported to the Beecher Falls Border Patrol Station for processing and further investigation. A photograph of the subjects in the tailgate area of the Honda CRV follows.



15. At the station, agents interviewed Victor Manuel GARCIA-ELOX, one of the passengers in the Honda CRV. A government-contracted interpreter was used, and the interview was conducted in Spanish. GARCIA-ELOX stated that he understood his *Miranda* rights and agreed to answer agents' questions without an attorney present. GARCIA-ELOX stated that he was from Veracruz, Mexico and that he had entered Canada on June 11, 2023. GARCIA-ELOX stated that he had met a person in Canada to help him cross the border into the United States and that he was to pay $5,000 (U.S. dollars) after arriving at the destination in the United States. GARCIA-ELOX stated he was going to California. GARCIA-ELOX stated two men in the van transported the group in Canada to the border and gave them directions regarding where to cross and meet a driver in the United States. GARCIA-ELOX stated the vehicle that picked them up

7

after they crossed into the United States was waiting for them. GARCIA-ELOX stated the driver told the group to get in and hide. GARCIA-ELOX stated he did not feel safe because of how he was positioned the vehicle while it was driving.

16. Agents also interviewed Irving ARANO-OCHOA, another one of the passengers in the Honda CRV. A government-contracted interpreter was used, and the interview was conducted in Spanish. ARANO-OCHOA stated that he understood his *Miranda* rights and agreed to answer agents' questions without an attorney present. ARANO-OCHOA stated that he was from Veracruz, Mexico and that he had arrived in Canada in February 2023. ARANO-OCHOA stated he met a smuggler over Facebook through a Facebook group called "Mexicanos en Toronto." ARANO-OCHOA stated a van had picked him up in Canada and that the van driver gave the group directions on how to cross the border into the United States. ARANO-OCHOA stated the vehicle that picked him up in the United States was waiting for the group after they crossed into the United States. ARANO-OCHOA stated the driver told them to get in quickly and that they would talk later. ARANO-OCHOA stated that the rear seats of the vehicle picking them up in the United States were folded down when they got in and that he felt as if he was in danger not having a seat belt on. ARANO-OCHOA stated he expected to pay $3,000 (Canadian dollars) after crossing into the United States. ARANO-OCHOA stated that if no work was available to him in the United States, he intended to return to Canada. ARANO-OCHOA had two phones in his possession that were secured by agents when he was detained. He declined to give agents consent to search the devices.

17. Agents also interviewed Eduardo GARCIA-VASQUEZ, another one of the passengers in the Honda CRV. A government-contracted interpreter was used, and the interview was conducted in Spanish. GARCIA-VASQUEZ stated that he understood his *Miranda* rights

8

and agreed to answer agents' questions without an attorney present. GARCIA-VASQUEZ stated that he arrived in Toronto, Canada eight days ago and that he found arrangements to cross the border into the United States through a WhatsApp group. GARCIA-VASQUEZ stated that he was to pay $5,000 (United States dollars) to the organizers at some point after he crossed into the United States. GARCIA-VASQUEZ stated that when he got into the vehicle that picked him up in the United States, the seats in the back were already folded down.

18. All wireless smartphone devices described above and in Attachment A were found during searches of the respective named subjects upon their detention and transport to the Beecher Falls Station. A backpack was found in the vehicle that HERNANDEZ later identified as his while agents were inventorying property at the Station. Inside the backpack, agents located a SIM Card and notebook. A total of 10 wireless smart phone devices, HERNANDEZ's SIM Card, and Hernandez's notebook were seized as evidence as part of the investigation.

## Conclusion and Request

19. Based on the foregoing, I submit there is probable cause to believe that on June 13, 2023, Abraham HERNANDEZ violated 8 U.S.C. § 1324 by attempting to transport multiple individuals—knowing or recklessly disregarding that the individuals had entered the United States—within the United States in furtherance of their illegal entry. I further submit that those individuals violated 8 U.S.C. § 1325 by entering the United States illegally on June 13, 2023. Finally, I submit that the information contained in this affidavit establishes probable cause for the issuance of a search warrant authorizing the examination of items listed in Attachment A and the seizure therefrom of information described in Attachment B.

24. Because this warrant seeks only permission to examine items already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion

onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this 24th day of July 2023.

*Attested to by reliable electronic means*
Salvatore D. Levatino
Border Patrol Agent (Intelligence)
U.S. Border Patrol, Department of Homeland Security


Attested to by the applicant in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 by Facetime call on July 24th, 2023.

*Kevin J. Doyle*
Hon. Kevin J. Doyle, Magistrate Judge
United States District Court
District of Vermont

10